# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| BRUCE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-0281-CV-W-NKL-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Plaintiff Bruce Brown's Motion for Summary Judgment [Doc. # 4]. Brown seeks judicial review of the Commissioner's denial of his request for disability insurance benefits under Title II of the Social Security Act. The Administrative Law Judge ("ALJ") found that Brown was not entitled to benefits, and such determination became the final decision of the Commissioner when the Appeals Council denied Brown's request for review. Brown has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole, the Court reverses the ALJ's

---

[1]Portions of the Parties' briefs are adopted without quotation designated.

1

decision and remands with instructions to award benefits.

I.      **Background**

Brown was born on September 8, 1956 and was forty-five years old on his alleged onset date (June 2, 2002). (Tr. 137.) He graduated from high school in 1975. (Tr. 127.)

Brown describes difficulties with simple daily activities, noting that he is no longer able to go to the grocery store, restaurants, or any large family gathering. (Tr. 81.) He noted that it is hard for him to wipe himself after using the restroom, further adding that he must sit on the toilet for a few minutes before he has the energy to take a shower. (Tr. 74-75.) Brown reported that he experiences severe back pain if standing more than five minutes. (Tr. 54.) Brown further noted that his legs hurt after standing for only two minutes, and he is unable to walk more than 50 feet without rest. (Tr. 54, 79.) Because of the constant sitting, Brown described sores on his back side and pain in his legs and feet from having to pull himself out of chairs. (Tr. 81, 90.) He also experiences severe shortness of breath when walking or doing any other type of light exertion. (Tr. 54.) Brown reported difficulties sleeping, because he is unable to lie flat, causing him to sleep in a recliner for the past two years. (Tr. 54, 74.) He noted that some nights he is unable to sleep at all. (Tr. 75, 97.)

Brown also reported that he is claustrophobic and experiences frequent panic attacks. (Tr. 53, 80, 97.) He further noted he has fears of inadequate seating, having to go someplace unfamiliar, being closed in, and lying flat. (Tr. 80.) Brown stated on his waiver of hearing that "I have had to miss by grandson's birthday and a close friend's

funeral because of my situation." (Tr. 36.) He also noted panic attacks when driving in traffic or being caught in a line. (Tr. 81.)

### A. Evidence of Brown's Physical Impairments

Brown has been diagnosed with morbid obesity, chronic back pain, hip pain, hypertension, probable sleep apnea, diminished hearing in his right ear, dermatitis, and possible early signs of carpal tunnel. (Tr. 123, 129-30.)

Stephen Dorsch, M.D., examined Brown on June 2, 2003 for complaints of back pain and increased anxiety. (Tr. 123.) Dr. Dorsch diagnosed Brown with back and hip pain, hypertension, and anxiety. (Tr. 123.) Dr. Dorsch noted that Brown's neurological examination indicated no weakness or neurological deficit of the lower extremities. (Tr. 123.) He was unable to do an MRI because of the patient's size.

Mary Brothers, M.D., examined Brown on February 8, 2005. (Tr. 126-30.) Dr. Brothers noted that Brown was 71 inches tall and weighed 451 pounds. (Tr. 128.) She further reported an elevated blood pressure of 164/100. (Tr. 128.) On standing examination, Dr. Brothers noted that Brown's posture was that of an obese man, with one transverse crease above the right iliac crest. (Tr. 128.) Dr. Brothers also reported that Brown was tender in the left lower back about four inches from the spine. (Tr. 128.) Brown's range of motion was "considerably limited" by his obesity, with audible creptitus during flexion. (Tr. 128.) Dr. Brothers noted that Brown's knees demonstrated diminished flexion on the right side with slight crepitus on passive motion. (Tr. 128.) Dr. Brothers further reported diminished internal rotation of the left leg at the hip without

3

pain. (Tr. 128.) She noted diminished extension in the feet and ankles, especially on the left, with slight crepitus on the grind test. (Tr. 128.) Dr. Brothers also noted inhibited reflexes at the ankles. (Tr. 129.) She noted that the left foot "was a bit purple and cool to the touch." (Tr. 129.) Dr. Brothers also opined that there is some question of radial nerve irritation at the dorsal forearm, as well as a slightly positive left Tinel sign. (Tr. 128-29.)

Brown reported to Dr. Brothers lower back pain so severe that he is unable to stand long enough to shower. (Tr. 126.) Dr. Brothers noted that Brown takes no regular medications and sometimes goes to work with his wife, who runs a bar. (Tr. 126-27.)

Dr. Brothers diagnosed Brown with morbid obesity, chronic lumbar pain, possible early signs of degenerative disc disease, hypertension, intermittent headaches, diminished hearing in the right ear, probable sleep apnea, dermatitis, possible carpal tunnel syndrome, arthritic changes in his bilateral ankles, and limited range of motion in the left hip. (Tr. 130-31.) Dr. Brothers opined that Brown would have trouble ambulating more than 2 or 3 blocks; could only walk 3 to 4 hours in an 8 hour day; should avoid repetitive bending; could lift 20 pounds occasionally; could sit for 4 to 6 hours in an 8 hour day with breaks every 1 to 2 hours; and would need to rotate positions frequently. (Tr. 130.) She also felt that Brown may benefit from a cane while walking on uneven surfaces or prolonged distances. (Tr. 130.) Dr. Brothers stated that Brown "may have fatigue from a sleep disorder and may require some napping." (Tr. 130.) Overall, Dr. Brothers opined that Brown's simple manual dexterity was intact, but that he needed further medical work-up, including a weight loss plan. (Tr. 130.) She noted the history of depression,

4

and further stated that depression "can be accentuated by or even caused by sleep disorder." (Tr. 130.)

### B. Evidence of Brown's Psychological Impairments

Brown has been diagnosed with anxiety, post traumatic stress disorder (PTSD), dysthymic disorder, and a panic disorder with agoraphobia. (Tr. 123, 138.) Brown's symptoms include frequent panic attacks, claustrophobia, traumatic flashbacks, and sleep difficulties. (Tr. 35, 54, 136, 137.)

Brown underwent a psychological evaluation by Jane Ruedi, Ph.D. on March 22, 2005. (Tr. 135-38.) Brown stated his primary problem was his back; he also had problems with being overweight, breathing, and sleeping. (Tr. 135.) Brown was the best man at a wedding, although they had to put a chair "up there" for him, which he did not consider right. (Tr. 136.)

Brown described problems with panic attacks and Dr. Ruedi noted that he declined to sit on the couch with a concern about difficulty rising later. Dr. Reudi reported that Brown's short term memory was fine, his abstract thought appeared intact, he demonstrated the capacity to understand and remember instructions and to sustain concentration and persistence in tasks, and in a one-to-one setting he demonstrated the capacity to interact socially. (Tr. 136-37.) Dr. Reudi also noted that Brown withdrew from the task of serial sevens after 35 seconds, saying that "he was not very good with numbers." (Tr. 136.) Dr. Ruedi reported that Brown described his current mood as feeling "like hell," because he is not able to do the things that he used to do. (Tr. 136.)

5

Brown further noted that he has difficulty with claustrophobia, causing him to leave the door open in the bathroom, as well as needing a clear shower curtain. (Tr. 136.) Brown described his panic attacks as his "body tightening up" and feeling as if he must move immediately. (Tr. 136.) He further described a "traumatic operation," involving an attempt to put a tube into his throat when he was not sedated. (Tr. 137.) Brown reported that he continues to have flashbacks at times of this event, and believes this is part of the reason he is unable to lie down. (Tr. 137.) Dr. Ruedi reported that Brown "described sleep difficulties, needing to sleep in a chair for the last three years due to obesity and his back problems." (Tr. 137.) He also reported witnessing his youngest son's death. (Tr. 137.) When asked about caring for his personal needs, Brown initially indicated that he considered himself capable; however, he realized that his wife does almost everything, including the cleaning, cooking, and shopping. (Tr. 137.)

Dr. Ruedi noted that Brown had sought neither therapy nor medication for his psychological issues. (Tr. 138.) She believed that Brown's ability to interact socially and to adapt to his environment appeared to be limited by his panic disorder with agoraphobia. (Tr. 137-38.) Dr. Ruedi diagnosed Mr. Brown with PTSD, a dysthymic disorder, and a panic disorder with agoraphobia, assigning him a global assessment of functioning (GAF) of 51.5. (Tr. 138.)

### C. Brown's Past Relevant Work and the Vocational Expert's Testimony

Brown has past relevant work as the general manager for a school bus company and as a maintenance worker. (Tr. 54.) He described his work at the school bus company

as involving supervision of 250 bus drivers, completing all paper work, and recruiting new employees. (Tr. 55.) Because no hearing was held, the ALJ sent interrogatories to a vocational expert, George Robert McClellan, who identified Brown's past relevant job as that of an Administrative Assistant, which requires medium exertion and is classified as skilled. (Tr. 119-21.) The ALJ then posed the following hypothetical to Mr. McClellan, assume that the claimant has/is:

- 45 to 49 years old;
- A high school education;
- Incapable of walking more than 2 to 3 blocks at a time or thirty minutes, for a total of 3 to 4 hours in an eight hour workday;
- Must avoid walking on uneven surfaces;
- Capable of occasional, but not repetitive, bending at the waist, kneeling, crouching, and squatting;
- Incapable of repetitively lifting weights in excess of 10 to 15 pounds, but can occasionally lift 20 pounds;
- Capable of sitting 4 to 6 hours in an 8-hour workday, with the ability to alternate between sitting and standing;
- Capable of sitting for 1 to 2 hours with a break or postural change;
- Incapable of working on ladders or scaffolding or climbing a rope and should minimize the use of stairs;
- Incapable of using upper extremities for high speed repetitive work. (Tr. 119-120.)

Mr. McClellan testified that such a claimant would not be capable of performing his past relevant work as Brown previously performed it. (Tr. 120.) He further testified that a claimant would have transferable skills to other work, including supervision skills, office machine use, ability to make business decisions, and plan, demonstrate, and evaluate work. (Tr. 120.) Mr. McClellan indicated that Brown could perform jobs such as a customer service representative and a telephone information clerk. (Tr. 120.)

**II.     The ALJ's Decision**

7

After consideration of the record, the ALJ found that Brown had "[m]orbid obesity; hypertension; mechanical low back pain; possible early carpal tunnel syndrome and some limitation of elbow flexion and wrist flexion; and arthritic change in ankles and some limitation of rotation of the left hip." (Tr. 19.) The ALJ found, however, that Brown did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. (Tr. 19.) The ALJ found that Brown's impairments would not preclude him from performing his past work as it is usually performed in the national economy and in significant numbers. (Tr. 19-20.) Consequently, the ALJ found Brown was not disabled.

## II.     Discussion

To establish that he is entitled to benefits, Brown must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997). In this case, the ALJ made three errors. First, the ALJ failed to classify Brown's sleep apnea and psychological conditions as severe. Second, the ALJ failed to consider the impact of Brown's obesity on his ability to work. Third, the ALJ provided a faulty hypothetical to the vocational expert.

### A.     The ALJ Erred By Finding That Brown's Sleep Apnea and Mental

### Impairments Were Not Severe

The ALJ uses a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. The second step of this process requires the ALJ to determine whether a medical impairment is severe. 20 C.F.R. § 404.1520(c). In this case, the ALJ determined that Brown's sleep apnea was not a severe impairment. He also determined that Brown had no severe mental impairments. The ALJ erred on both determinations.

A severe impairment is one which alone, or in combination with other physical or mental impairments, imposes more than minimal restrictions on an individual's ability to perform basic work activities. *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003). The ALJ discounted Brown's documented sleep apnea, noting "the other diagnoses listed by Dr. Brothers, singly, and in combination, are 'nonsevere' because no functional limitations are attributable to them and/or because these diagnoses are untreated and rely solely on the claimant's statements of his history at the examination." (Tr. 16.)

Brown reported that he gets anywhere between one and six hours of sleep at night. (Tr. 127.) Based on her evaluation, Dr. Brothers opined that Brown had "probable sleep apnea," further noting that he "snores loud enough to awaken himself." (Tr. 127, 129.) Dr. Brothers also opined that Brown's history of depression could be "accentuated or even caused by sleep disorder." (Tr. 130.) Moreover, Dr. Brothers opined that Brown may experience fatigue as a result of his sleep difficulties, requiring the ability to nap throughout the work day. (Tr. 130.) This limitation taken alone would impede Brown's

9

ability to work. Dr. Brothers' evaluation supports the fact that Brown's sleep difficulties satisfy the de minimus standard required for a severe impairment. *Bowen v. Yuckert,* 482 U.S. 137; *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989).

The only psychological evaluation of record was performed by Jane Ruedi, Ph.D., on March 22, 2005 at the request of DDS. (Tr. 135.) Following this evaluation, Dr. Ruedi diagnosed Brown with PTSD and a panic disorder with agoraphobia. (Tr. 138.) PTSD is characterized by intense fear, helplessness, and flashbacks.[2] During his evaluation, Brown described a "traumatic operation," involving an attempt to put a tube into his throat when he was not sedated. (Tr. 137.) Brown reported that he believes this is part of the reason he is unable to lie down. (Tr. 137.) He also reported witnessing his son's death, which continues to cause traumatic flashbacks. (Tr. 137.)

Similarly, a panic disorder with agoraphobia is characterized by anxiety related to being in places or situations from which escape might be difficult, all similar symptoms to those noted by Brown throughout the record. Brown reported to Dr. Ruedi that he regularly experienced panic attacks and had difficulties with claustrophobia. (Tr. 136.) He further noted that he has to leave the bathroom door open and must use a clear shower curtain because of his impairments. (Tr. 136.) Brown described difficulties breathing if someone pulls up behind him at the bank. (Tr. 136.) He reported being uncomfortable when away from home, noting feelings of claustrophobia by closed in spaces and

---

[2] *Diagnostic and Statistical Manual of Mental Disorders* 424 (Am. Psychiatric Ass'n ed., 4th ed. 1994).

crowded rooms. (Tr. 137.) Dr. Ruedi opined that "while in the one to one setting he demonstrated the capacity to interact socially, his ability to do so and to adapt to his environment appears limited by his panic disorder with agoraphobia." (Tr. 138.)

No medical opinion of record contradicts that of Dr. Ruedi. However, the ALJ chose to afford no weight to Dr. Ruedi's evaluation, because of Brown's lack of treatment and the alleged inconsistencies in his history, specifically the fact that he was the best man at a wedding and went to work on occasion with his wife. (Tr. 16.) Dr. Ruedi, the mental health specialist, was aware of these factors when she performed her evaluation. (Tr. 135, 136.) Despite this, Dr. Ruedi found Brown to have significant mental limitations as a result of a panic disorder and PTSD. (Tr. 137-38.) Moreover, the forms completed by Brown throughout the record consistently describe similar limitations, noting severe panic attacks and irrational fears, including fears of unfamiliar places, lying down flat, and fears of being "closed in." (Tr. 35-36, 53, 54, 80, 81, 136-37.) Brown's statements are fully supported by the psychological evaluation. Dr. Ruedi is a trained mental health professional and her opinion should not have been disregarded.

The ALJ improperly found that Brown's "history is not consistent with a panic disorder with agoraphobia." (Tr. 16, 17.) This is a finding which is best made by the medical expert, not the ALJ. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (noting that "health professionals, in particular psychiatrists, not lawyers or judges, are the experts on [mental illness]"). In this case, the only mental health professional of record opined that Brown suffered from significant limitations as a result of his mental

11

impairments.  Further, Brown's actions, and the substantial evidence of record as a whole, are consistent with such a finding.

An impairment is severe if it imposes more than minimal restrictions on the ability to perform basic work activities.  *Jones v. Barnhart*, 335 F.3d at 699 (8th Cir. 2003); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996) (finding of no severity is limited to medical impairments that would have no more than minimal effect on claimant's ability to work).   Brown's panic disorder and PTSD impose more than a "minimal restriction" on his ability to perform work activities.  Regular panic attacks, claustrophobia, and traumatic flashbacks each impose a significant restriction on Brown's ability to sustain employment.  Further, the fatigue caused by his documented sleep difficulties would also impose more than a minimal restriction on his ability to work.  The ALJ erred by finding Brown's mental impairments and sleep apnea to be nonsevere, and further erred by not considering them in his overall evaluation of Brown's ability to perform work activity. (Tr. 16.)

When a claimant asserts a number of different impairments, the Social Security Act requires that the ALJ to consider the combined effect of all of the individual's impairments without regard to whether any individual impairment, if considered separately, would meet the definition of severe.  20 C.F.R. § 404.1523; *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991) ("The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects.").  Because the ALJ did not find Brown's mental impairments and sleep apnea severe, the effects of these

12

impairments were not considered in combination with Brown's morbid obesity, hypertension, and chronic lower back pain.

### B. The ALJ Erred by Failing to Consider the Impact of Brown's Obesity on His Ability to Work

Obesity is a complex, chronic disease characterized by excessive accumulation of body fat. Social Security Ruling 02-01p, *Titles II and XVI: Evaluation of Obesity* (2002). Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems and may cause or contribute to mental impairments such as depression. *Id*. When an ALJ identifies obesity as a medically determinable impairment, the ALJ has a duty to consider what functional limitations may result from the obesity in the assessment. *Id*.

In the instant case, the ALJ found that Brown's obesity was a severe impairment, but failed to comply with Social Security Ruling 02-01p by not considering the impact of Brown's obesity on his ability to work. Following a March 2005 consultative examination, Dr. Brothers reported that Brown was 71 inches tall and weighed 451 pounds. (Tr. 128.) Additionally, Brown has a history of hypertension, back pain, and sleep apnea, all impairments commonly associated with obesity and exacerbated by obesity. (Tr. 19, 127-130, 138.) Obesity can cause further limitations of function in sitting, standing, walking, lifting and stooping. The ALJ should have considered how Brown's obesity, when combined with his other impairments, would affect his "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and

13

stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (noting that the ALJ has a duty to develop the record fully and fairly even when a claimant is represented by counsel).

### C. The ALJ Erred by Providing A Faulty Hypothetical to the Vocational Expert

It is well settled in the Eighth Circuit that "[t]estimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). In the previous sections, the Court found that Brown's mental limitations and sleep apnea satisfied the de minimus severity threshold. The ALJ's hypothetical, however, provided for no mental limitations, nor any limitations resulting from Brown's sleep apnea or obesity. (Tr. 119-120.) Because the hypothetical did not include all of Brown's deficiencies, the testimony of the vocational expert that Brown could return to his past relevant work does not constitute substantial evidence.

## III. Conclusion

A review of the record reveals that the ALJ's decision that Brown is not disabled is not supported by substantial evidence. Accordingly, it is hereby

ORDERED that Brown's Motion for Summary Judgment [Doc. # 4] is GRANTED. The decision of the Commissioner is REVERSED and REMANDED with instruction to award benefits.

14

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 1, 2006
Jefferson City, Missouri

15